IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRAIG J. DUCHOSSOIS REVOCABLE )
TRUST UAD 9/11/1989, )
                                      )
                Plaintiff, )
                                      )
        v. )              No. 05 C 6603
                                      )
CDX LABORATORIES, INC., )
                                      )
                Defendant. )

## MEMORANDUM OPINION AND ORDER

As this Court began its January 25, 2006 memorandum opinion

and order, rejecting the Fed. R. Civ. P. ("Rule") 12(b)(2) motion

of CDx Laboratories, Inc. ("CDx") that challenged its

susceptibility to in personam jurisdiction in this forum:

> This is a straightforward action on a promissory note
> ("Note")--an unfulfilled promise to pay a specified
> amount on a specified date (the "Maturity Date" was
> almost exactly a year ago:  January 20, 2005).

Now Craig J. Duchossois Revocable Trust UAD 9/11/1989

("Duchossois Trust"), payee under the Note, has moved under Rule

12(c) for judgment on the pleadings.  For the reasons stated in

this memorandum opinion and order, the motion is granted and

judgment is ordered to be entered in Duchossois Trust's favor.

CDx's Answer admits its execution of the Note and the fact

that the Note remains unpaid.  Because there is also no question

that the original "Maturity Date" of January 20, 2005 has long

since passed, CDx must perforce look to its affirmative defenses

("ADs") to resist enforcement of the Note.  Those ADs basically

rely on agreements by Trustee Craig Duchossois to extend the payment deadline (AD Common ¶2).[1]

One such extension is incontrovertible: It was set out in a February 28, 2005 letter agreement (Ex. 1 to this opinion) that extended the Maturity Date to May 30, 2005. But in the absence of any further documented extension, CDx resorts to this amorphous assertion (AD Common ¶5):

> Subsequently, plaintiff, again acting through its agents including Trustee, Craig Duchossois, communicated to defendant that plaintiff would agree to an additional, indefinite extension of the deadline for payment otherwise due under the note.

Based on that assertion, CDx has sought to invoke two ADs, respectively claiming novation and estoppel. It seems that CDx's counsel has thought better of that original effort, for his March 27 response to Duchossois Trust's motion has characterized those ADs as "inartfully labeled" (Response 4 n.1), shifting his ground to "Waiver/Estoppel" instead. Nonetheless, although the same footnote asserts that CDx's version of the facts "give[s] plaintiff sufficient notice of the nature of defendant's defenses" (perhaps through an exercise in mindreading?), this

___

[1] Because the current motion is advanced under Rule 12(c), the operative standard is the same as that under Rule 12(b)(6): CDx's allegations must be accepted as true, with the facts viewed in the light most favorable to it (GATX Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995)). Accordingly this opinion has omitted "CDx alleges" or the like from this sentence of the text and will continue with such omissions hereafter, although in so doing this Court is not of course making any factual findings of its own.

2

opinion will first take CDx's originally asserted grounds at face value, addressing the ADs as they were then posed, after which it will turn to CDx's currently revised contentions.[2] As the ensuing analysis demonstrates, CDx cannot head off judgment on the Note no matter how it characterizes its purported defenses.

As for any purported novation, New York law[3] (as is indeed true universally, see, e.g., Cincinnati Ins. Co. v. Leighton, 403 F.3d 879, 887 (7th Cir. 2005)) identifies four essential elements, as well as stating the conventional contractual need for valuable consideration to satisfy the fourth of those elements. Here are those requirements as set out in Wasserstrom v. Interstate Litho Corp., 495 N.Y.S.2d 217, 219 (N.Y. App. Div. 1985):

> Furthermore, the requisite elements of a novation, each of which must be present (Griggs v. Day, 136 N.Y. 152, 160, 32 N.E. 612, rearg. denied 137 N.Y. 542, 32 N.E. 1001), include a previous valid obligation, agreement of all parties to the new obligation, extinguishment of the old contract, and a valid new contract (Town & Country Linoleum & Carpet Co. v. Welch, 56 A.D.2d 708, 392 N.Y.S.2d 517).

---

[2] This approach makes added sense because what will be said as to those originally stated grounds both (1) casts relevant light on CDx's current revision of those grounds and (2) confirms that CDx has painted itself into a conceptual corner from which it cannot extricate itself.

[3] Note §7.2 provides:

> This Note shall be governed and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely within such state.

3

\*            \*            \*

> In addition, a novation requires that valuable consideration be given for the new contract (<u>Federal Deposit Ins. Corp. v. Hyer</u>, 66 A.D.2d 521, 529, 413 N.Y.S.2d 939, <u>appeal</u> <u>dismissed</u> 47 N.Y.2d 951).

Most frequently a novation introduces a new obligor, with the old obligor and its obligation being released, but it is also possible (though conceptually somewhat more difficult) to release an obligor from an earlier contract if a new one binding that same obligor takes its place. In all events, even though a failure on just one of the above-quoted elements would be enough to spell defeat for CDx's novation claim, here CDx strikes out on at least two of the four--and perhaps a third as well.

First, it obviously puts a great deal of strain on the normal reading of language to speak of an oral agreement that simply extended the Note's payment date, with no other change being involved, as a "new obligation." Again that flaw alone would scotch CDx's claim, but it is unnecessary to probe more deeply in that regard because of CDx's clear failure on two of the other essential elements.

In that respect it is a total distortion of the facts (even in CDx's version) to speak of "extinguishment of the old obligation" here. After all, the "old obligation" is one that expressly required CDx to pay $150,000 to Duchossois Trust. Even under CDx's scenario that "old obligation" remained unaltered: It was not "extinguished" by an asserted promise that deferred

4

payment "indefinitely"--or to quote the old FRAM oil filter TV commercial, "You can pay me now, or pay me later."

Indeed, the FRAM commercial had more certainty than the illusory "promise" that CDx has asserted here, for the FRAM slogan was instinct with the certainty that the owner of the car would inevitably have to pay the garage mechanic, either a small amount for engine maintenance now (the installation of the FRAM filter) or a much larger payment for major engine work later if no FRAM filter were installed now. By contrast, the purported "indefinite extension" in this case would provide no assurance to Duchossois Trust that the Note would ever be paid. As Ershow v. Site Holdings, Inc., No. 95 Civ. 2451 (RPP), 1995 WL 384457, at *5 (S.D. N.Y. June 28) describes New York law in that respect:

> To be enforceable, a promise must be sufficiently certain and specific so that the parties' intentions are ascertainable. Mocca Lodge, Inc. v. Misak, 94 A.D.2d 761, 762, 462 N.Y.S.2d 704, 706 (2d Dep't 1983). Absent any indication of an objective standard for fixing a material term, independent of each party's wish or desire, courts will decline to supply the term themselves. Bernstein v. Felske, 143 A.D.2d 863, 865, 533 N.Y.S.2d 538, 540 (2d Dep't 1988).

> The deferral agreement alleged by the defendants is legally unenforceable, because it contains no objective standard by which a trier or fact could determine whether, under any given set of financial circumstances, the defendants' failure to repay the plaintiffs would constitute a breach.

But the final clincher in rejecting any idea of a novation is the fourth requirement that the "valid new contract" (if there were one) must be supported by consideration. To that end we

also learn in the first year of law school (in Contracts 101 or
its equivalent) that (Ershow, 1995 WL 384457, at *4):

> It is hornbook law that an agreement unsupported by
> consideration is invalid. I. & I. Holding Corp. v.
> Gainsburg, 276 N.Y. 427, 433, 12 N.E.2d 532, 534
> (1934). Fresh consideration is required for an oral
> modification of a written contract or a novation. New
> York General Obligations Law §5-1103; Tierney v.
> Capricorn Investors, L.P., 189 A.D.2d 629, 631, 592
> N.Y.S.2d 700, 703 (2d Dep't 1993). Neither a promise
> to do that which the promisor is already legally bound
> to do, nor the performance of an existing legal
> obligation, constitutes valid consideration. Id.

With any potential "novation" concept thus having been shot

down, this opinion next considers CDx's original alternative

defense based on a claimed oral amendment as to the Note's

payment date.[4] As to that claim, N.Y. Gen. Oblig. Law §5-1103

(emphasis added) is fatal to CDx's contention because of the same

lack of consideration:

> An agreement, promise or undertaking to change or
> modify, or to discharge in whole or in part, any
> contract, obligation, or lease, or any mortgage or
> other security interest in personal or real property,
> shall not be invalid because of the absence of
> consideration, provided that the agreement, promise or
> undertaking changing, modifying, or discharging such
> contract, obligation or lease, mortgage or security
> interest, shall be in writing and signed by the party
> against whom it is sought to enforce the change,
> modification or discharge, or by his agent.

---

[4] Again CDx's Response is essentially silent on that score,
instead restricting its current position to one asserting waiver
(of which more later). But once again CDx's propensity for
presenting a moving target seems to call for dispatching its
original contentions, lest its counsel's apparent Hydra-like
approach may lead back to those original arguments once the head
has been lopped off of its newly-advanced waiver argument.

6

As to that statute, see the opinion by Judge Jack Weinstein in
LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc., 92
F.Supp.2d 119, 129 (E.D. N.Y. 2000), which followed a quotation
of the selfsame language with this quotation from Tierney v.
Capricorn Investors L.L.P., 592 N.Y.S.2d 700, 703 (N.Y. App. Div.
1993):

> Neither a promise to do that which the promisor is
> already bound to do, nor the performance of an existing
> legal obligation constitutes valid consideration [for a
> contract modification].

What has been said to this point has effectively torpedoed
both perspectives from which CDx has approached its AD 1. This
opinion turns then to CDx's AD 2, which asserts that Duchossois
Trust is barred by estoppel. As Duchossois Trust says
accurately, CDx's counsel did not initially identify just which
brand of estoppel he sought to advance, and Duchossois Trust's
counsel is equally accurate in stating that equitable estoppel
cannot even arguably come into play here, for the necessary
elements as to both CDx and Duchossois Trust are missing (see
Aetna Cas. & Surety Co. v. Aniero Concrete Co., 404 F.2d 566, 607
(2d Cir. 2005)).

As for the other potential branch of estoppel, promissory
estoppel, New York (like other jurisdictions) requires this
showing by a claimant (Gen. Elec. Co. v. Compagnie Euralair,
S.A., 945 F.Supp. 527, 536 (S.D. N.Y. 1996)):

> The elements of a defense of promissory estoppel are:

7

a clear and unambiguous promise, reasonable and
foreseeable reliance on that promise, and
unconscionable injury as a result of that reliance.

That shorthand summary merely echoes the more fully fleshed out

standards exemplified by the opinion in <u>James v. W. N.Y.</u>

<u>Computing Sys., Inc.</u>, 710 N.Y.S.2d 740, 742-43 (N.Y. App. Div.

2000):

> Also contrary to plaintiff's contention, the amended
> complaint fails to state a viable cause of action for
> promissory estoppel. The alleged oral promise is not
> sufficiently clear and unambiguous to support such a
> cause of action (<u>see generally</u>, <u>Gurreri v. Associates</u>
> <u>Ins. Co.</u>, 248 A.D.2d 356, 357, 669 N.Y.S.2d 629).
>
>         *        *        *
>
> Additionally, promissory estoppel is available only
> where a party reasonably relies on an oral
> representation and it would be unconscionable to deny
> enforcement of the oral agreement (<u>see</u>, <u>Steele v.</u>
> <u>Delverde S.R.L.</u>, 242 A.D.2d 414, 415, 662 N.Y.S.2d 30).

Here too CDx flunks on more than one of those requirements (if

not indeed on all three), although once again even one strike is

out.

As for the initial requirement of "a clear and unambiguous

promise," surely (as pointed out earlier) the claimed "indefinite

extension" promise is the epitome of ambiguity. Totally without

standards as that promise is, does it denote a prohibition on

Duchossois Trust's <u>ever</u> demanding payment? If not, what basis

does it provide for defining when the claimed period of

uncollectibility crosses over the line into permissible

collectibility?[5] As if that were not enough to defeat CDx's estoppel defense (and it is), CDx's own version of events negates the notion of its "reasonable and foreseeable reliance" on the promise of an "indefinite extension." With no predictable assurance of any period of forbearance being contained in the amorphous promise, any purported reliance by CDx would lack any standard of reasonableness--and a fortiori would negate any concept of foreseeability on Duchossois Trust's part.

Lastly, as to any purported "unconscionable injury," CDx says only that it "allocated funding otherwise available to satisfy [its] other obligations," whereas it otherwise "could/would have allocated to make such payments to [Duchossois Trust]" (AD 2 ¶6). As Duchossois Trust Mem. 8-9 correctly points out, for CDx thus to prefer one creditor over another does not equate to injury, let alone unconscionable injury (among other reasons because the aggregate of its remaining unpaid obligations remained the same). So CDx has failed to satisfy the third component of a promissory estoppel defense as well, even though only a single failure on a single element would have been enough

_____

[5] It is worth noting that Duchossois Trust did not bring this action for almost six months after the agreed-upon written extension of the Maturity Date to May 30, 2005. Even if this Court were to take the impermissible step of rewriting the parties' claimed "indefinite extension" by substituting a concept such as reasonableness (a step that is forbidden under New York law, as Ershow, 1995 WL 384457, at *5 teaches), CDx could not legitimately claim a violation of that impermissibly rewritten promise.

9

to defeat that defense.

What has been said to this point has aptly demonstrated why CDx has taken a totally different tack in its Response, focusing instead on a concept of waiver or estoppel that, it says, does not require a new contract or new consideration to preclude Duchossois Trust from insisting on "strict compliance." But even the briefest analysis shows that position to be as empty as the others that have already been dispatched in this opinion.

That is so because Duchossois Trust's asserted oral agreement "to an additional, indefinite extension of the deadline for payment otherwise due under the note" (AD Common ¶5), even when viewed in the light most reasonably favorable to CDx, cannot be said to have waived payment of the Note (as contrasted with the timing of such payment). This is not at all a situation like that in the cases relied upon by the CDx Response, in which some contractual requirement was found to have been waived--that is, did not have to be performed at all (see, e.g., Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1275 (7th Cir. 1996), applying New York law).

Here, by contrast, CDx's obligation to pay its $150,000 indebtedness remained intact, with the only asserted waiver being one as to the requirement of payment on the Maturity Date. And when Duchossois Trust acted as it did to enforce that obligation by bringing this lawsuit, not having done so until nearly six

10

months had elapsed after the last fixed Maturity Date of May 30, 2005, that cannot be said to have been a violation of its asserted "waiver" of strict compliance.[6]

## Conclusion

CDx's purported defenses to the Duchossois Trust claim for judgment have even less substance than Lewis Carroll's evanescent grin on the face of the Cheshire Cat. Duchossois Trust's motion for judgment on the pleadings is granted, and judgment is ordered to be entered in its favor and against CDx in the amount of $150,000 plus interest at 12% per annum from January 20, 2004 through today's date (an interest component that amounts to $39,500), for a total judgment of $189,500.

Milton I. Shadur
Senior United States District Judge

Date: March 30, 2006

---

[6] Once more, to hold otherwise would be to foist on Duchossois Trust a promise that it never made even under CDx's version of events: a promise to forgo payment of the Note entirely.

# CDx LABORATORIES, INC.®



February 28, 2005

Mr. Craig Duchossois
Duchossois Industries Inc.
845 Larch Ave.
Elmhurst, IL 60126

Dear Mr. Duchossois:

The Major Transaction which is used to establish the discounted conversion price of your Convertible Promissory Note dated January 20, 2004 has not yet closed, and no conversion price for your note has therefore been established.

In order to make your conversion option effectual, this letter is to confirm that the nominal Maturity Date on the face of your Convertible Promissory Note dated January 20, 2004 is hereby extended through May 30, 2005.

Please do not hesitate to contact me if you have any further questions.

Sincerely,

Mark Rutenberg

Agreed and Accepted:

EXHIBIT 1

